**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTER DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil No. |
| UNITED STATES CURRENCY IN THE AMOUNT OF $100,000.00, | |
| UNITED STATES CURRENCY IN THE AMOUNT OF $100,000.00, | |
| UNITED STATES CURRENCY IN THE AMOUNT OF $30,100.00, | |
| UNITED STATES CURRENCY IN THE AMOUNT OF $1,150.00, | |
| UNITED STATES CURRENCY IN THE AMOUNT OF $215.00, | |
| UNITED STATES CURRENCY IN THE AMOUNT OF $450.00, | |
| UNITED STATES CURRENCY IN THE AMOUNT OF $1,050.00, | |
| UNITED STATES CURRENCY IN THE AMOUNT OF $4,000.00, | |
| 590 ASSORTED FIREARMS SEIZED ON OR ABOUT APRIL 11, 2024, MORE PARTICULARLY DESCRIBED IN ATTACHMENT A, and | |
| APPROXIMATELY 2,880 ROUNDS OF ASSORTED AMMUNITION SEIZED ON OR ABOUT APRIL 11, 2024, MORE PARTICULARLY DESCRIBED IN ATTACHMENT A, | |
| Defendants. | |

## COMPLAINT FOR FORFEITURE IN REM

Plaintiff, United States of America, by its attorneys, Teresa A. Moore, United States Attorney for the Western District of Missouri, and Anthony M. Brown, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.     This is an action to forfeit property to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), and 18 U.S.C. § 924(d).

## THE DEFENDANT IN REM

2.     The defendant property consists of the following currency, that was seized from Phillip Rains on or about April 11, 2024, at his residence in Poplar Bluff, Missouri:

   a.  United States Currency in the Amount of $100,000

   b.  United States Currency in the Amount of $100,000

   c.  United States Currency in the Amount of $30,100

   d.  United States Currency in the Amount of $1,150

   e.  United States Currency in the Amount of $215

   f.  United States Currency in the Amount of $450

   g.  United States Currency in the Amount of $1,050 and,

   h.  United States Currency in the Amount of $4,000

The defendant property also consists of 590 Assorted Firearms and Approximately 2,880 Rounds of Assorted Ammunition that was seized from Phillip Rains on or about April 11, 2024, at his residence in Poplar Bluff, Missouri, more particularly described in Attachment A.

3.        The defendant currency, with the exception of $4,000.00, is presently in the custody of the United States Marshals Service in the Eastern District of Missouri. $4,000.00 in United States currency is presently in the custody of the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") in Jefferson City, Western District of Missouri. The defendant 590 Assorted Firearms and Approximately 2,880 Rounds of Assorted Ammunition are presently in the custody of the ATF in Columbia, Western District of Missouri.

## JURISDICTION AND VENUE

4.        This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 18 U.S.C. § 981(a)(1)(C), and 18 U.S.C. § 924(d).

5.        This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district and pursuant to 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the defendant firearms and ammunition seized outside this district have been brought into this district.

6.        Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395, because the defendant firearms and ammunition seized outside this district have been brought into this district.

## BASIS FOR FORFEITURE

7.        The Defendant currency is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), because it constitutes, or is derived from, proceeds traceable to any offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7) and 1961(1)) or a

conspiracy to commit such offense, with such offenses including violations of 18 U.S.C. § 924(n) and 18 U.S.C. § 933 (relating to trafficking in firearms).

8.    The Defendant 590 Assorted Firearms and Approximately 2,880 Rounds of Assorted Ammunition are subject to forfeiture pursuant to 18 U.S.C. § 924(d), because they were involved in or intended to be used in a knowing violation of 18 U.S.C. § 922(a)(1), that is engaging in the business of importing, manufacturing, or dealing in firearms or ammunition, or in the course of such business shipping, transporting, or receiving any firearm or ammunition in interstate or foreign commerce, where the firearms or ammunition intended to be used in the offense is involved in a pattern of activities, including violations of any offense described in 18 U.S.C. § 922(a)(1), (a)(3), or (b)(3).

9.    The Defendant 590 Assorted Firearms and Approximately 2,880 Rounds of Assorted Ammunition are subject to forfeiture pursuant to 18 U.S.C. § 924(d) because they were possessed by a person under indictment for a crime punishable by imprisonment for a term exceeding one year and had been transported or shipped in interstate or foreign commerce, in violation of 18 U.S.C. § 922(n).

10.    The Defendant 590 Assorted Firearms and Approximately 2,880 Rounds of Assorted Ammunition are subject to forfeiture pursuant to 18 U.S.C. § 924(d) because they were involved in or used in violations of 18 U.S.C. § 922(a)(6), that is, knowingly making a false statement in connection with the purchase of a firearm.

## FACTUAL ALLEGATIONS

11.    Phillip Leroy Rains ("Rains") is not and has never been a Federal Firearms Licensee ("FFL"), and as a result, cannot lawfully operate as a dealer of firearms.

12.     On June 29, 2012, a Special Agent ("SA") of the ATF conducted surveillance at the Sale Barn Flea Market in Popular Bluff, Eastern District of Missouri. During the surveillance, the ATF SA observed firearms being offered for sale at a booth in front of a red Chevrolet pickup truck with Missouri vehicle license plate 2AD493, which checked back to Rains.

13.     On May 15, 2015, the ATF received information that Rains was selling firearms from an enclosed trailer that was attached to a red Chevrolet pickup truck with Missouri vehicle license plate 2AD493 (hereinafter the "subject trailer" and "subject vehicle") at the Mason Dixon Flea Market, in Union, Eastern District of Missouri. The ATF also learned that Rains told potential customers that he regularly sold firearms at the Mason Dixon Flea Market and the Sale Barn Flea Market in Popular Bluff, Missouri.

14.     In October 2020, ATF and United States Drug Enforcement Administration ("DEA") officers, acting in an undercover capacity, purchased four (4) handguns from Rains at the Sale Barn Flea Market in Popular Bluff, Missouri. During ATF and DEA's agents' interactions with Rains, Rains admitted to the undercover agents that he sold "a lot" of firearms, had sold firearms at a flea market near the Missouri/Iowa border the previous weekend, regularly conducted transactions with the owner of a pawn shop in St. Louis, Missouri, and offered to conduct a sale to a nominee in violation of federal law.

15.     On September 15, 2021, Rains completed and certified an ATF form 4473[1] for a firearm transaction at an FFL in Poplar Bluff, Missouri. The initial response provided by the

---

[1] ATF Form 4473, also known as a Firearms Transaction Record, requires a firearms buyer to answer a number of questions about the transaction under oath and penalty of law, including whether they are acquiring the firearm for themselves, if they intend on selling the firearm to someone else in furtherance of a felony, if they are currently under indictment or have been convicted of a felony, if they are unlawfully using controlled substances, if they're a United States citizen, among others.

Federal Bureau of Investigation's ("FBI") National Instant Criminal Background Check System ("NICS") was to delay the transaction with a Brady[2] transfer date of September 21, 2021. On September 22, 2021, the Poplar Bluff FFL transferred four (4) firearms to Rains after no response from NICS.

16.     On October 23, 2021, Rains completed and certified an ATF form 4473 for a firearm transaction with an FFL located in Saint James, Missouri. The initial response provided by the FBI NICS was to delay the transaction with a Brady transfer date of October 28, 2021.

17.     On October 24, 2021, Rains completed and certified an ATF form 4473 for a firearms transaction with an FFL in Rolla, Missouri. The initial response provided by the FBI NICS was to delay the transaction with a Brady transfer date of October 28, 2021.

18.     On October 28, 2021, an ATF SA from the Cape Girardeau, Missouri, Field Office received a NICS Delayed Denial[3] for the four firearms transferred to Rains during the September 22, 2021, transaction within Poplar Bluff, Missouri. The reason given for the FBI NICS denial was Rains having an outstanding arrest warrant based upon a grand jury indictment in the felony case out of Franklin County, Missouri, which was filed on July 30, 2021, and is still pending[4]. ATF agents and troopers with the Missouri State Highway Patrol (MSHP) contacted Rains at his residence in Poplar Bluff, Missouri. ATF recovered three of the firearms in the FBI NICS referral,

---

[2] The Brady Handgun Violence Prevention Act imposed provisions on FFL's that receive an FBI NICS "delayed" response for a firearms transaction. If no additional response is received from NICS, the FFL may transfer the firearm after three business days have elapsed.

[3] A NICS Delayed Denial is a firearms transaction where firearm(s) are transferred to an individual after the mandatory three business day waiting period with no follow up response from FBI NICS. If FBI NICS determines the individual is prohibited from possessing firearms under federal law, and the firearm(s) have already been transferred to the individual, FBI sends a referral to the ATF for the firearms transaction.

[4] *State of Missouri v. Philip Rains*, Circuit Court of Franklin County, Missouri, case number 21AB-CR02125.

as well as (4) additional firearms. Rains made a statement that he no longer possessed one of the firearms related to the NICS referral because had sold the firearm to an "associate," whom Rains did not identify. The four additional firearms recovered from Rains were firearms that Rains admitted he purchased from two different FFLs on October 23, 2021, at a gun show in West Plains, Missouri. Rains stated the FFLs, from Rolla, Missouri and from Saint James, Missouri, contacted him and advised him that he had been denied by FBI NICS and requested Rains return the firearms to the FFL in Poplar Bluff, Missouri.

19.    A check of Rains's employment history with the state of Missouri revealed that Rains had no known employment.

20.    For the past several years, the ATF Jefferson City, Missouri, Office has received information through other investigations and conversations with various law enforcement agencies regarding the existence of a swap meet in rural Morgan County, Missouri. This swap meet is open to the public and is called "Franks Swap," located near Jacob's Cave at 23114 Highway TT, Versailles, Morgan County, Missouri. This swap meet is conducted three times per year, typically near the beginning of each month in April, June, and October. There have been past reports of machineguns, silencers, and illegal firearms trafficking being conducted during this swap meet.

### April 1, 2023 – Contact with Rains by UC-1

21.    On April 1, 2023, ATF SAs, acting in an undercover capacity, attended the "Franks Swap" swap meet.

22.    One of the ATF SAs ("UC-1") observed Rains operating alone as a vendor with the subject vehicle and subject trailer, with five tables that displayed approximately 90 firearms for sale.

23.     UC-1 moved to a table having approximately 20 handguns lying on top of it and engaged in conversation with Rains, who advised as to the prices of the handguns. UC-1 selected a firearm and purchased it from Rains for $650.00 in cash.

24.     When asked when he would be back at "Franks Swap", Rains advised that he would be back the next day and in June, and that he also sold firearms at a swap meet in Rutledge, Missouri, Poplar Bluff, Missouri, and Union, Missouri, through the rest of the month.

25.     UC-1 left "Franks Swap" with the firearm and was not required by Rains to fill out any paperwork or produce any identification.

### May 20, 2023 – Rains in Union, Missouri

26.     On May 20, 2023, an off-duty ATF contractor was at the Great American Flea Market ("Great American") in Union, Missouri. The ATF contractor observed an older white male, later identified as Rains, seated in a chair near tables that displayed several firearms, both long guns and handguns, for sale. The handguns appeared to be new in the boxes with price tags affixed to the trigger guards. The ATF contractor identified the subject truck and subject trailer associated with Rains previously seen at "Franks Swap".

27.     The ATF contractor had seen Rains on previous occasions at the Great American and has never observed that Rains was equipped to run FBI NICS checks or process credit cards.

28.     The ATF contractor believed that the individual later identified as Rains was potentially dealing in firearms without a license and reported the activity to an ATF SA in Saint Louis, Missouri, who later positively identified the individual as Rains.

**June 2, 2023 – Contact with Rains by UC-2**

29.     On June 2, 2023, ATF SAs, along with an ATF Task Force Officer ("TFO") and a Boone County, Missouri, Sheriff's Office Detective, all acting in an undercover capacity, attended the "Franks Swap" swap meet in Morgan County, Missouri.

30.     One of the ATF SAs ("UC-2") observed Rains, the subject vehicle, and the subject trailer, with several tables and approximately 116 firearms for sale. UC-2 observed numerous handguns and long guns for sale on the tables, and firearms on the ground beneath the tables, with affixed price tag labels. UC-2 observed Rains as the only person operating the tables and observed Rains using a cloth to clean firearms displayed for sale as UC-2 approached.

31.     UC-2 asked Rains if the firearms on the ground were for sale and he indicated that they were, and they consisted of Rugers, Smith & Wessons, and Glocks separated into various sections. Rains stated he would have brought more guns if he had table space and sometimes a "dealer" would come and buy all of the Glocks he had, but they had failed to show up yesterday.

32.     UC-2 indicated to Rains that they did not understand what Rains had meant, and Rains clarified, "Dealers, see dealers buy from me. You know if they bought all them Glocks, I'd take a straight six hundred [dollars] a piece for em', and I've had em' do that. I've had some blacks come in here from Saint Louis and buy every Glock I had. Two or three years in a row they've done that." UC-2 replied, "Oh some dealers from Saint Louis?" Rains continued, "Yep, I guess they're dealers. I don't know why anybody would want that many. I figured they was buying them to resell."

33.     UC-2 inspected the Glock handguns for sale. Another unidentified male subject, who was a potential customer, told Rains, "You got a lot of inventory." Rains replied, "Yeah, yeah normally in April and October I sell a lot, but in June I don't sell that many. Probably was

overoptimistic to bring this many, but we'll see." The unidentified male subject asked Rains if he believed the price of firearms would ever go back down. Rains replied, "No… no they won't go back down… In October they will be higher than they are here today. Cause I've got some now I bought at auctions, that's gonna be higher [rest of statement was unintelligible]."

34.     UC-2 asked Rains if one of the Glock .45 caliber firearms offered for sale was new, and Rains stated, "Some of them might be, some of them close to it. I mean, they're second ownership.   Yeah, that's nearly a new gun." UC-2 acknowledged and asked, "Oh, but it is used?" Rains answered, "Yeah, all my guns are used. I can't buy 'em, I don't have a license to buy new guns." UC-2 asked about the price of $650 for the Glock handguns and Rains replied, "Six-fifty, unless you buy four, at least four [rest of the statement was unintelligible]."

35.     UC-2 inspected a Glock, model 19x, 9mm semi-automatic handgun, serial number BKKS737. Rains commented, "The nineteen x.   They was designed, I think, for the military or sold to the military and then they released it to the public. I used to sell every one of them I bring out." UC-2 told Rains they would purchase the firearm and handed Rains $700 in United States currency in exchange for the firearm, and asked Rains if he had a $50 bill for change. Rains indicated he had "something close" and provided UC-2 with $50 in return, making the total purchase price of the firearm $650.

36.     UC-2 asked Rains if he was somewhere over by Union, Missouri, as UC-2 believed they had seen Rains. Rains said, "Yeah, that's closer to home, I'm from Poplar Bluff." Rains continued, "When I ain't out here at one of the bigger markets, I sell at Union. It's a good little market, I sell a few guns there." UC-2 indicated this was the first time he/she had been to the Jacobs Cave swap meet ("Franks Swap"). Rains responded, "I've been coming here off an on for about six or eight years. June is not the best time here, April and October is the best." UC-2 asked

how often the show in Union (Missouri) occurred. Rains stated, "Every weekend. Every Saturday and Sunday." Rains indicated he "don't mess with it in the wintertime… but it's pretty well open all winter." Rains continued, "This is a three time a year event. Now they have Rutledge, and that's next weekend. It's laid out like this, not quite as big, but I sell a lot of guns. In fact, I've sold as many guns up there as I do here. That's close to, east of, uh Kirksville." UC-2 asked Rains if he was going to be up there (Rutledge, Missouri) next weekend. Rains replied that he was and stated, "I'll be up there Thursday through Saturday… If the weather's [unintelligible] next Sunday, after I leave up there Saturday, I'll go to Union because it's on my way home." In speaking of the swap meet in Rutledge, Missouri, Rains continued, "Years and years ago, they were open on Sunday, and you know, it's kinda like this market on Sunday. There ain't much going on, there's a lot of people loading up. But you know, hey I stay and sometimes I pick up enough to pay all my expenses for the trip, you know, so can't kick on that if you ain't got nothing else to do."

37.     UC-2 asked Rains if he ever took firearms in trade. Rains stated, "Once in a great while, but I've got so many guns right now I kinda hate to." Rains later stated, "Yeah, I do sometimes if I get low on certain guns. If they're good guns I can take a trade and maybe turn it around and sell it and make a hundred dollars quick, well, I occasionally do it."

38.     UC-2 ended the contact with Rains and left the area with the purchased firearm. Rains did not require UC-2 to complete any paperwork or documentation and did not require UC-2 to produce any identification to complete the firearm transaction.

**June 2, 2023 – Contact with Rains by UC-3**

39.     On June 3, 2023, an ATF TFO ("UC-3") contacted Rains at "Franks Swap" in Morgan County, Missouri. Rains was at the same location UC-2 observed him at on June 2, 2023. UC-3 also observed the subject vehicle and subject trailer. UC-3 noted the firearms were displayed

in a variety of ways, from unsecured, in holsters, and several in firearms boxes. UC-3 also observed the Ruger and Glock boxes behind the display tables on the ground in front of the suspect trailer and observed boxes of ammunition amongst the firearms for sale.

40.    UC-3 asked Rains if the firearms (referring to all of the firearms) were brand new. Rains stated, "No, they're second ownership. Some of them are nearly new or used. But they're second ownership. I am not a dealer. I sell them used." Rains told UC-3, "Here it's cash and carry. You don't have to do no paperwork. No nothing."

41.    UC-3 advised that they were interested in purchasing a Glock firearm, but also a second firearm. Rains showed UC-3 a Smith & Wesson handgun, which Rains valued at $575. Additionally, Rains provided a holster for the gun.

42.    UC-3 purchased a Glock semi-automatic handgun and a Smith & Wesson semi-automatic handgun for $1,225 and provided United States currency to Rains for the transaction.

43.    UC-3 ended their contact with Rains and left the area with the purchased firearms. Rains did not require UC-3 to complete any paperwork or documentation and did not require UC-3 to produce any identification to complete the firearms transaction.

44.    Between July 24, 2020, and April 15, 2023, several firearms were recovered by law enforcement in Arkansas, California, Illinois, Iowa, and Missouri which were involved in felony offenses, including murder, and were originally purchased by Rains, 11 of which were purchased by others after Rains had been indicted with a felony offense in the Circuit Court of Franklin County, Missouri.

**April 11, 2024 – Seizures**

45.    On April 11, 2024, members of the ATF served a federal search and seizure warrant issued by United States Magistrate Judge Abbie Crites-Leoni for the Eastern District of Missouri at Rains's residence in Poplar Bluff, Butler County, Missouri.

46.    In the living room office area of the residence, ATF personnel located and seized firearms, ammunition, firearm sales related documents, and price tags, a 2024 calendar regarding gun shows, and firearm acquisition and disposition ledgers.

47.    Throughout the entire residence, ATF personnel located the 590 firearms described in "Attachment A".

48.    In an unfinished basement of the residence in a safe, ATF personnel located $100,000 in United States currency in a blue metal box, $100,000 in United States currency in a grey metal box, $34,100 in United States currency in a shoe box, and a bank-style bag that contained $1,150 in United States currency, all of which was seized.

49.    The currency located in the shoe box included 40 one-hundred-dollar bills that ATF had used to purchase firearms from Rains.

50.    In the subject vehicle, ATF personnel located and seized $215.00 in United States currency from Rains's wallet, $450.00 in United States currency in a bank bag, and $1,050 in United States currency in a separate bank bag.

51.    The seized firearms and ammunition were transported to the ATF National Property Center approved evidence storage facility in Columbia, Boone County, Missouri, which is within the Western District of Missouri.

52.    The Defendant 590 Assorted Firearms were examined and found to have had all been manufactured outside of the state of Missouri and were therefore transported in interstate or

foreign commerce. While there is a possibility that some of the Approximately 2,880 Rounds of Assorted Ammunition were home made within the state of Missouri, there are no smokeless gun powder manufacturers in state, and therefore the ammunition would have affected interstate commerce.

53.     The 40 marked one-hundred-dollar bills, totaling $4,000.00, were transported to the ATF's Jefferson City, Missouri satellite office within the Western District of Missouri. The remaining currency was converted to a cashier's check and deposited in a bank account for the United States Marshal's Service for the Eastern District of Missouri.

54.     On information and belief, it is believed that the majority of the United States currency seized was as a result of illegal firearms sales by Rains occurring throughout and in the Western District of Missouri.

## CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF

55.     The Plaintiff repeats and incorporates by reference the paragraphs above.

56.     By the foregoing and other acts, the Defendant currency is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), because it constitutes, or is derived from, proceeds traceable to any offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7) and 1961(1)) or a conspiracy to commit such offense, with such offenses including violations of 18 U.S.C. § 924(n) and 18 U.S.C. § 933 (relating to trafficking in firearms).

### SECOND CLAIM FOR RELIEF

57.     The Plaintiff repeats and incorporates by reference paragraphs 1 through 54.

58.     By the foregoing and other acts, the Defendant 590 Assorted Firearms and Approximately 2,880 Rounds of Assorted Ammunition are subject to forfeiture to the United States pursuant to 18 U.S.C. § 924(d) because they were involved in or intended to be used in a

knowing violation of 18 U.S.C. § 922(a)(1), that is engaging in the business of importing, manufacturing, or dealing in firearms or ammunition, or in the course of such business shipping, transporting, or receiving any firearm or ammunition in interstate or foreign commerce, where the firearms or ammunition intended to be used in the offense is involved in a pattern of activities, including violations of any offense described in 18 U.S.C. § 922(a)(1), (a)(3), or (b)(3).

## THIRD CLAIM FOR RELIEF

59.    The Plaintiff repeats and incorporates by reference paragraphs 1 through 54.

60.    By the foregoing and other acts, The Defendant 590 Assorted Firearms and Approximately 2,880 Rounds of Assorted Ammunition are subject to forfeiture pursuant to 18 U.S.C. § 924(d) because they were possessed by a person under indictment for a crime punishable by imprisonment for a term exceeding one year and had been transported or shipped in interstate or foreign commerce, in violation of 18 U.S.C. § 922(n).

## FOURTH CLAIM FOR RELIEF

61.    The Plaintiff repeats and incorporates by reference paragraphs 1 through 54.

62.    By the foregoing and other acts, the Defendant 590 Assorted Firearms and Approximately 2,880 Rounds of Ammunition are subject to forfeiture pursuant to 18 U.S.C. § 924(d) because they were involved in or used in violations of 18 U.S.C. § 922(a)(6), that is, knowingly making a false statement in connection with the purchase of a firearm.

WHEREFORE the United States prays that the defendant property be forfeited to the United States, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

Respectfully submitted,

TERESA A. MOORE
United States Attorney

By:    */s/ Anthony M. Brown*
      **ANTHONY M. BROWN**
      Assistant United States Attorney
      Missouri Bar No. 62504
      901 East St. Louis St.
      Suite 500
      Springfield, Missouri 65806
      Telephone: 417-575-8167
      E-mail: Anthony.Brown2@usdoj.gov

## <u>VERIFICATION</u>

I, Special Agent Charles Tomlin, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives, that I have read the foregoing Verified Complaint <u>in Rem</u> and know the contents thereof, and that the factual matters contained in paragraphs <u>11</u> through <u>54</u> of the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated  10/11/24

Charles H. Tomlin
Digitally signed by
Charles H. Tomlin
Date: 2024.10.11
15:29:24 -05'00'

Charles Tomlin
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives